UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Christopher Bell, | : | Case No. 1:04-cv-0154 |
| | : | |
|     Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| Sergeant Mullins, et al, | : | |
| | : | |
|     Defendants. | : | |

**ORDER**

Before the Court is Defendant's motion for summary judgment (Doc. 47).  Plaintiff opposes the motion (Doc. 55), and Defendant has filed a reply (Doc. 56).

The Court grants summary judgment to Defendant Sgt. Mullins on Plaintiff's Section 1983 claim.

**FACTUAL BACKGROUND**

Mr. Bell is a prison inmate of the State of Ohio; he has been incarcerated since the early 1990's.  In December 2003, Bell was transferred from Trumbull Correctional Institution to Allen Correctional Institution.  Bell told officials at Allen that he needed more space to accommodate his legal materials, relating to six lawsuits he had pending at that time.  Rather than provide Bell an additional locker, Bell contends that ACI confiscated his materials and placed him in segregation until March 14, 2003.

In September 2003, Bell was transferred to the Lebanon Correctional Institution, and Bell asked that his legal materials

-1-

be transferred with him.  Two months later, in November 2003, Bell was transferred again to Warren Correctional Institution. Bell alleges that two boxes of legal materials were mailed to him by a relative on November 1, 2003, addressed to him at Lebanon. He alleges that the Lebanon institution forwarded the boxes to the Warren Correctional Facility.  Bell alleges that Sergeant Mullins, who is the Warren institution's mailroom supervisor, kept the arrival of the boxes a "secret" from him.  Instead of immediately giving Bell the materials in the boxes, Mullins recorded them as containing contraband material.  Bell was informed of this decision about a week later, on November 13, 2003.

Bell filed a prison grievance on November 20, 2003, because Bell contended that the materials in the boxes were "legal materials" which had not been given to him.  On December 2, 2003, his grievance was denied.  The grievance inspector found that Mullins had properly labeled the materials as contraband under applicable ODRC regulations.  The inspector found that the boxes bore the name of an attorney in the Cleveland area, but the address on the box did not match the law office address of that attorney.  Under Ohio Admin. Code §5120-9-17 (H), the boxes were not "legal material" but were instead properly classified as "minor contraband."

The two boxes were then mailed back to the sender, Bell's

relative.  It is unclear from the pleadings when or if Bell may have eventually received the two boxes, which are described as containing old transcripts and prison kites.

## PROCEDURAL HISTORY

Bell filed his pro se complaint in this case on February 24, 2004 under 42 U.S.C. §1983 against a number of prison employees and officials.  (Doc. 2)  Magistrate Judge Hogan recommended that all of Bell's original claims against all Defendants should be dismissed.  In addition, the Magistrate Judge recommended that Bell's motion to amend his complaint, Doc. 13, also be denied except for a single claim against Sergeant Mullins for impeding Bell's free access to the courts.  (Report & Recommendation, Doc. 19)  This Court overruled all objections to the Magistrate Judge's Report and Recommendation and adopted that report on December 8, 2004.  (Doc. 28)

Bell sought interlocutory review from the Sixth Circuit, which affirmed this Court's order dismissing all Bell's claims save the access claim against Sgt. Mullins.  See Dkt. No. 05-3088, Order of November 14, 2005.

Bell's amended complaint alleges that Sgt. Mullins tortiously and intentionally interfered with his access to legal materials he needed to prosecute two Ohio Court of Claims actions.  His original complaint had alleged interference with a case he filed in the Northern District of Ohio.  As the

Magistrate Judge's Report noted, that complaint was dismissed sua
sponte by the district judge.  Bell's amended complaint alleges
that Mullins interfered with two Court of Claims actions Bell
filed against the Ohio Department of Rehabilitation and
Corrections, seeking monetary damages for personal injuries Bell
allegedly suffered while incarcerated.

**ANALYSIS**

1.    Summary Judgment Standards.

The standards for summary judgment are well established.
Summary judgment is proper "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party
opposing a properly supported summary judgment motion "'may not
rest upon the mere allegations or denials of his pleading, but
... must set forth specific facts showing that there is a genuine
issue for trial.'"  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986) (quoting First Nat'l Bank of Arizona v. Cities
Serv. Co., 391 U.S. 253 (1968)).  The Court is not duty bound to
search the entire record in an effort to establish a lack of
material facts.  Guarino v. Brookfield Township Trs., 980 F.2d
399, 404 (6th Cir. 1992); InterRoyal Corp. v. Sponseller, 889
F.2d 108, 111 (6th Cir. 1989), cert. den., Superior Roll Forming

<u>Co. v. InterRoyal Corp.</u>, 494 U.S. 1091 (1990).  Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. <u>Anderson</u>, 477 U.S. at 250.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Electric Industries Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. <u>United States v. Diebold Inc.</u>, 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Id</u>. at 250.  "If the evidence is merely colorable, . . . , or is not significantly probative, . . . , the court may grant judgment." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, <u>Smith v.</u>

Hudson, 600 F.2d 60, 63 (6th Cir. 1979), cert. dismissed, 444

U.S. 986 (1979), the United States Supreme Court has stated that

the "[s]ummary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of

the Federal Rules as a whole, which are designed to 'secure the

just, speedy and inexpensive determination of every action.'"

Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citations

omitted).

2.   Bell's Section 1983 Claim.

An incarcerated inmate may challenge an unlawful denial of

access to the courts under 42 U.S.C. §1983, as access to legal

process the courthouse is constitutionally protected.  However,

Bell must establish an "actual injury" caused by Mullins' conduct

in order to succeed on his claim.

Bell accuses Mullins of intentionally seizing his materials

with the express purpose of blocking his entry to the courthouse

door.  The facts show that the two boxes of disputed materials

arrived at Warren Correctional, that they had been sent by Bell's

relative James Willis, that Mullins classified the material as

contraband, and that Bell was notified of this classification.

The November 13, 2003 "Notice of Receipt" informing Bell about

this situation states that the boxes "may be destroyed or

returned to sender at your expense."

Three provisions of the Ohio Administrative Code address

-6-

this situation.  OAC §5120-9-17 deals with "Incoming mail" for inmates, and generally covers first class letters.  Subsection (A)(2) requires "Legal mail" to clearly bear the return address of an attorney, a law office or legal clinic, a court, or a correctional institution inspection committee.  "Legal mail" cannot be opened or inspected unless the inmate is present.  All mail except "legal mail" must be opened and searched for contraband before being given to an inmate.  Under §5120-9-17(C), contraband "may be returned to the sender, confiscated as evidence, held for the benefit of the inmate, or otherwise disposed of in a manner consistent with the law."

OAC §5120-9-55 defines two classes of contraband, "major" and "minor."  Minor contraband includes items obtained in an improper manner or method.  Contraband must be logged by the institution when it is received, and may be confiscated. Subsection (C)(1)(b) states that "minor contraband" may be returned to the sender if the inmate agrees to pay the postage costs.

Finally, OAC §5120-9-33 restricts packages inmates may receive to those sent from approved vendors or individuals on the inmate's approved visitor list.

The two boxes addressed to Bell came from "James Willis." The Defendant contends that "James Willis" is an attorney in the Cleveland area, and that the boxes indicated they came from an

attorney.  Because the address on the box did not match the published address for attorney Willis, Mullins avers that he opened the boxes and searched for contraband.  After Bell's grievance was rejected, the boxes were returned to the sender, as expressly permitted under the OAC sections cited above.

Bell argues that Mullins intended to withhold these documents in order to prejudice Bell's pending court cases.  The Court concludes that Mullins' action in opening the boxes and returning them to their sender were clearly authorized by the regulations pertaining to these materials.

Even if Bell's evidence raises some inference of intentional misconduct by Mullins (e.g., because he failed to hold the boxes for Bell's benefit as allowed by §5120-9-17(C)), Bell must establish some prejudice caused by Mullins' alleged intentional misconduct, or some causal connection between that misconduct and the dismissal of his Court of Claims complaints.  The Memorandum of Decision filed in each of those two Court of Claims cases are clear that Bell's claims were decided and dismissed on the merits, and not due to Bell's lack of prosecution or failure to produce evidence that might have been in the two boxes at issue.

Bell's complaint in Case No. C2002-06391, filed on June 28, 2002, alleged that Bell was improperly denied a bottom bunk assignment at Grafton Correctional Institution, and also deprived of medical care for a fall he allegedly had from his top bunk.

-8-

The Court's Memorandum Decision of May 5, 2004 held that any claim based on conduct before June 28, 2001 (one year prior to Bell's complaint) was untimely.  Bell's allegations about events in the summer of 2000 and his bunk assignment were simply time-barred.  The Court also noted that Bell failed to allege the basis for any duty the correctional institution breached in failing to give him a lower bunk.  Sgt. Mullins' conduct concerning Bell's legal materials in November and December 2003 had nothing to do with the merits or timeliness of the complaint Bell filed in June 2002.

Bell's second Court of Claims action, filed on November 8, 2002 (Case No. C2002-09854), alleged injuries arising from Bell's placement in an area of housing at Grafton that permitted inmates to smoke.  Bell's placement lasted for one day, from July 20 to July 21, 2001.  The Memorandum Decision issued April 26, 2004 found that Bell failed to prove he suffered any damages as a result of this short-time exposure.  The Court also concluded that ODRC owed him no duty "to prevent his being exposed to second hand smoke at all times."  The Court of Claims judge noted that exposure to second-hand smoke may in some circumstances state a cause of action under Section 1983, but noted that such claims cannot be prosecuted in the Court of Claims.

It is beyond argument that these two decisions were made on the merits of Bell's claims for damages against the state, and

not because Bell lacked documentary evidence for any of his
charges.  This conclusion is confirmed by a review of Bell's
written response to the ODRC's investigation report in each of
his cases.  His response was detailed, and included specific
dates of events and names of prison employees, as well as
citations to case law and administrative code sections.  Bell
also sought - and was granted - extensions of time to file his
responses to those investigation reports, arguing that he needed
to obtain his files from his mother's house.  These are
presumably the same files in dispute here.  Despite the events of
November and December 2003 involving the two boxes of materials,
Bell filed his responses in both cases in the Court of Claims in
January 2004.

Bell repeatedly states here that the lack of access to his
materials prevented him from proving a set of facts that could
constitute a compensable injury.  However, it is clear that the
**facts** were well known to Bell, but those facts simply were
insufficient to sustain his Court of Claims complaints.

Finally, Bell has failed to prove he sustained any actual
injury as a result of Mullins' conduct, an essential element of
his Section 1983 claim.  See Lewis v. Casey, 518 U.S. 343 (1996).
Bell testified in deposition that his injury was the loss of his
two Court of Claims actions, and the damages he sought there of
approximately $5,000.  Bell also claimed damages based on the

stress and emotional upset the dismissals caused him.  The Court

has already found that Sgt. Mullins' conduct had no causal

relationship to the dismissal of those cases.  The stress or

disappointment Bell experienced when his claims were found to be

without merit is not an "actual injury" for purposes of Section

1983.  See, e.g., <u>Memphis Community School Dist. v. Stachura</u>, 477

U.S. 299, 308 (1986), noting that the "abstract value of a

constitutional right may not form the basis for Section 1983

damages."

Finally, to the extent that Bell is attempting to challenge

the OAC regulations governing "legal mail" and "minor

contraband," such a challenge is foreclosed by the Supreme Court:

"We held in *Turner v. Safley*, 482 U.S. 78, 96 L. Ed. 2d 64, 107

S. Ct. 2254 (1987), that a prison regulation impinging on

inmates' constitutional rights "is valid if it is reasonably

related to legitimate penological interests." *Id.*, at 89. Such a

deferential standard is necessary, we explained,

> "if 'prison administrators . . . , and not the courts,
> [are] to make the difficult judgments concerning
> institutional operations.' Subjecting the day-to-day
> judgments of prison officials to an inflexible strict
> scrutiny analysis would seriously hamper their ability
> to anticipate security problems and to adopt innovative
> solutions to the intractable problems of prison
> administration."

<u>Lewis v. Casey</u>, 518 U.S. at 361 (internal block citation

omitted).  The definition and treatment of "legal mail" and the

"contraband" regulations are entitled to deference from this

Court.  Bell has not articulated any basis upon which the Court could conclude that deference is not due the prison officials' interpretation and application of the mail regulations, given the facts presented here.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion for summary judgment (Doc. 47) is GRANTED.  Plaintiff's complaint is dismissed with prejudice.

SO ORDERED.

DATED: March 23, 2007                    s/Sandra S. Beckwith
                                         Sandra S. Beckwith, Chief Judge
                                          United States District Court